UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| In re Subpoena to Daniel McLean in | ) ) |
| | )    Case No. 2:18-cv-201 |
| *Jacob R. Kent, et al., v.* *R.L. Vallee, Inc., et al.,* No. 617-6-15 Cncv | ) ) ) |

## OPINION AND ORDER

Pending before the Court is Daniel McLean's motion to quash a subpoena issued by R.L. Vallee, Inc. ("Vallee"). Mr. McLean is employed in the Office of United States Senator Bernie Sanders. Vallee is a defendant in a state court civil action, brought by private litigants, accusing it of gasoline price fixing. In recent years, Senator Sanders has conducted hearings and sought information from a variety of sources on the issue of gasoline pricing in Vermont. Vallee's subpoena to Mr. McLean seeks deposition testimony and wide-ranging document production, including but not limited to internal Senate communications, primarily with respect to that issue.

Mr. McLean and the Office of Senator Sanders removed the subpoena to this Court pursuant to 28 U.S.C. §§ 1442(a) and 1446. The motion to quash argues that the subpoena is barred by sovereign immunity and the United States Constitution's Speech or Debate Clause. The motion also contends that the document request is unduly burdensome. For the reasons set forth below, the motion to quash is **granted.**

**Background**

In mid-2012, Senator Sanders began publicly questioning the pricing of gasoline throughout Vermont. That same year, he wrote to the Federal Trade Commission ("FTC") expressing his concerns. He also held a hearing on the issue in Burlington, Vermont. On numerous occasions, Senator Sanders has spoken on the Senate floor and sponsored legislation relating to the cost of gasoline. ECF No. 7 at 15.

On September 17, 2014, Mr. McLean emailed Ryan Kriger, a Vermont Assistant Attorney General, in response to the Attorney General's expressed desire for gasoline pricing data. ECF No. 10-14 at 2 ("I have some ideas on how you can get some pricing data that the AG said he was looking for."). On September 25, 2014, Senator Sanders met in his Burlington office with AAG Kriger, Mr. McLean, and Assistant Attorney General Wendy Morgan. AAG Kriger has been deposed and was asked about his handwritten notes from that meeting. His notes include a comment stating: "Bring case just to make a point." ECF No. 10-16 at 18. AAG Kriger testified that the statement was made in "the context of spitballing and brainstorming," and that he did not "know if it was proposed seriously." *Id.* at 19. The context of the statement reflected in AAG Kriger's notes remains uncertain.

In November 2014, Attorney Joshua L. Simonds wrote to Senator Sanders' office and stated that he was looking into

2

advocating for consumers on the issue of gasoline pricing. ECF No. 10-21 at 2. Attorney Simonds also asked the Senator to share relevant materials. Mr. McLean offered to meet with Attorney Simonds to discuss the issue and provide him with data. ECF No. 10-22 at 2. Between February and April, 2015, Mr. McLean also corresponded with attorneys from the law firm of Bailey & Glasser. In his communications with Bailey & Glasser, Mr. McLean used his private "gmail.com" account rather than his official Senate email. ECF No. 10-23 at 4. One such email, in response to a question from Bailey & Glasser, attached a copy of a press release issued by Senator Sanders' office on July 6, 2012 relating to gasoline pricing in Vermont. ECF No. 10-24 at 2.

On June 22, 2015, Bailey & Glasser, together with Attorney Simonds, filed a putative class action against Vallee and others in state court accusing the defendants of price fixing. Between 2012 and 2014, Vallee was reportedly one of three wholesalers who, when aggregated, owned over 50% of the gas stations in the three counties that comprise northwest Vermont. ECF No. 10-23 at 2-3.

According to the Office of Senate Legal Counsel, all documents provided by Mr. McLean to plaintiffs' counsel have been produced in the course of the state court litigation. ECF No. 7 at 3. On November 9, 2018, Vallee served a subpoena on Mr. McLean seeking thirty categories of additional documents spanning

the time period January 1, 2009 to September 22, 2015.  Mr.
McLean's pending motion asks the Court to quash that subpoena.

Vallee's subpoena seeks a wide range of documents, including
both internal and external Senate communications relating to gas
pricing legislation.  Specifically, the subpoena commands the
production of communications regarding either R.L. Vallee or
Rodolphe ("Skip") Vallee; communications about competition in the
gasoline business; communications about actual or possible
investigations regarding such competition; communications about
actual or possible legislative hearings regarding such
competition; communications with the Vermont Attorney General's
office; communications with the media; meetings or communications
with federal agencies about gasoline pricing or competition;
communications with other United States Senators regarding
gasoline prices and competition; and meetings or communications
with class action counsel.  The subpoena also seeks documents
reflecting communications regarding the possible 2012 or 2018
United States Senate candidacies of either Skip Vallee or former
Vermont Governor James Douglas.  ECF No. 10-2 at 4-7.

## Discussion

### I.  Sovereign Immunity

Mr. McLean first contends that the information sought by the
subpoena is barred by Congress's sovereign immunity.  Sovereign
immunity protects the United States government from suit unless

the government has consented to be sued.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981).  A waiver of sovereign immunity cannot be implied, and must instead be unequivocally expressed.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citation omitted).  The party seeking relief against the government bears the burden of showing that its claims fall within an applicable waiver.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

"The doctrine of sovereign immunity applies with equal force to . . . subpoenas for documents or testimony."  *SEC v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 216 (S.D.N.Y. 2015) (citing *United States EPA v. Gen. Elec. Co.*, 197 F.3d 592, 597 (2d Cir. 1999), *opinion amended on reh'g*, 212 F.3d 689 (2d Cir. 2000)); *see also In re SEC ex rel. Glotzer*, 374 F.3d 184, 190 n.7 (2d Cir. 2004) (sovereign immunity bars a subpoena for testimony because such a subpoena "constitutes an attempt to compel the [government] to act")).  Subpoena proceedings "fall within the protection of sovereign immunity even though they are technically against the federal employee and not against the sovereign."  *Boron Oil Co. v. Downie*, 873 F.2d 67, 71 (4th Cir. 1989).  With respect to any waiver of sovereign immunity for subpoenas, the Second Circuit

has noted that

> [t]he rules governing discovery and the issuance of
> subpoenas duces tecum for the production of documents
> by third parties include no express waivers of the type
> necessary to subject the government to compulsion in
> judicial proceedings to which it is not a party.  The
> only express waiver to be found in this regard is in
> the [Administrative Procedures Act ("APA")].

*Gen. Elec. Co.*, 197 F.3d at 598.  Mr. McLean submits that the
APA's waiver of sovereign immunity does not apply here for two
reasons: (1) the APA is only applicable to actions in federal
court (as opposed to state court, where the subpoena in this case
would take effect), and (2) the APA does not apply to Congress or
Congressional staff.  Vallee does not contest either of those
assertions.

Neither party has cited controlling case law on the question
presented by this case: whether sovereign immunity bars a private
party subpoena seeking documents from a Congressional office.
The Southern District of New York has opined in dicta that
"sovereign immunity (1) encompasses Congress and Members of
Congress acting in their official capacities, and (2) applies
where private parties have brought subpoena enforcement actions
against Federal agencies."  *Comm. on Ways & Means*, 161 F. Supp.
3d at 217.  Mr. McLean cites two additional cases, each of which
were brought *pro se* in district courts.  The first, *Cartwright v.
Walsh*, 2018 WL 461236 (M.D. Pa. Jan. 18, 2018), involved a
litigant who had been the subject of a filing injunction for

multiple frivolous suits, and whose underlying state court suit had already been dismissed. The district court quashed his subpoenas on the basis of sovereign immunity, but it is not clear whether the issue was fully briefed. In the other factually-similar case, *Khaha v. Husna*, Case No. 5:13-cv-25 (E.D.N.C. Apr. 9, 2013), the *pro se* plaintiff conceded that sovereign immunity applied so long as the subpoena had been properly removed to federal court.

In *Gravel v. United States*, 408 U.S. 606, 608-09 (1972), Senator Gravel moved to quash a grand jury subpoena served on a member of his staff in connection with possible crimes relating to publication of the Pentagon Papers. The Supreme Court's opinion did not mention sovereign immunity. *See Comm. on Ways & Means*, 161 F. Supp. 3d at 218 ("There is no suggestion in *Gravel* that sovereign immunity barred enforcement of the grand jury subpoena."). Similarly, in *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997), the Office of Independent Counsel moved to enforce a grand jury subpoena seeking documents from White House Counsel, and the D.C. Circuit offered "no suggestion . . . that the doctrine of sovereign immunity barred enforcement of the subpoena." *Comm. on Ways & Means*, 161 F. Supp. 3d at 218.

Because *Gravel* and *In re Sealed Case* arose out of grand jury subpoenas, and not from a private party subpoena, their legal analyses may not apply directly to this case. In any event, the

7

question of whether Congressional sovereign immunity may be used as a defense to a private party subpoena remains unsettled.

Vallee argues that sovereign immunity does not apply because Mr. McLean was acting outside his official duties. The Court disagrees, as Mr. McLean's actions and the circumstances around Vallee's subpoena each bear indicia of official action. Mr. McLean's initial interaction with the Vermont Attorney General's office closely followed the Senator's public inquiries regarding gasoline pricing. In reaching out to AAG Kriger, Mr. McLean was responding to a question posed by the Attorney General with regard to the same issue. Mr. McLean's subsequent communication with Attorney Simonds was similarly responsive to a request for information. Communications that followed, with both Simonds and Bailey & Glasser, flowed from that initial request. Because gasoline pricing was an ongoing concern for Senator Sanders, and a topic for potential legislation, Mr. McLean's efforts to assist with investigation and advocacy on the issue were consistent with the policy goals of his office. Furthermore, although McLean may have used his private email to engage in those communications, that fact alone does not diminish the official nature of his actions.

The subpoena itself also strongly suggests official, rather than personal, conduct. The subpoena is addressed to Mr. McLean at his Senate office. It was served on government counsel. The

requested information consists almost exclusively of documents
and information controlled by the Senator's office or the Senate
itself.  That information includes internal communications and
communications with constituents, the latter of which is a
significant element of a Senator's official work.  *See Williams
v. United States*, 71 F.3d 502, 507 (5th Cir. 1995) ("Besides
participating in debates and voting on the Congressional floor, a
primary obligation of a Member of Congress in a representative
democracy is to serve and respond to his or her constituents.").

Because the information sought in the subpoena constitutes
official Senate documents, sovereign immunity may well apply,
though its application to a private party subpoena is an open
question of law.  If sovereign immunity does apply, Vallee has
not carried its burden of showing that Congress validly and
knowingly waived its immunity.  The Court will not require such a
showing, however, since the matter of sovereign immunity does not
need to be resolved here.  Instead, for reasons set forth below,
the Court finds that the requested information, including Mr.
McLean's deposition testimony, is protected by the Speech or
Debate Clause and is unduly burdensome.

## II.  The Speech or Debate Clause

Article I, Section 6, Clause 1 of the United States
Constitution provides that "for any Speech or Debate in either
House, [members of Congress] shall not be questioned in any other

Place."  The Speech or Debate Clause fulfills the "function of reinforcing the separation of powers so deliberately established by the Founders," and ensures that "the legislative function the Constitution allocates to Congress may be performed independently."  *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502–03 (1975); *see also Gravel*, 408 U.S. at 616.

"Without exception," the Speech or Debate Clause has "been "read . . . broadly to effectuate its purposes."  *Eastland*, 421 U.S. at 501; *see also Doe v. McMillan*, 412 U.S. 306, 311 (1973). Accordingly, the Clause has been construed to cover any activity that is "'an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.'"  *Eastland*, 421 U.S. at 504 (quoting *Gravel*, 408 U.S. at 625); *see also Bogan v. Scott-Harris*, 523 U.S. 44, 54–55 (1998) (actions are legislative in nature when they are "integral steps in the legislative process").  Such acts include "delivering an opinion, uttering a speech, or haranguing in debate; proposing legislation; voting on legislation; making, publishing, presenting, and using legislative reports; authorizing investigations and issuing subpoenas; and holding hearings and introducing material at committee hearings."  *Comm.*

*on Ways & Means*, 161 F. Supp. 3d at 236 (internal quotations marks and citations omitted).

"[O]nce it is determined that Members are acting within the 'legitimate legislative sphere[,]' the Speech or Debate Clause is an absolute bar to interference." *Eastland*, 421 U.S. at 503 (quoting *McMillan*, 412 U.S. at 314). That absolute bar prevents members of Congress from having to "divert time, energy, and attention from their legislative tasks." *Eastland*, 421 U.S. at 503. Immunity under the Speech or Debate Clause extends to legislative aides acting on behalf of a Senator or Congressperson. *See Gravel*, 408 U.S. at 616–17.

Consistent with its plain text, the Speech or Debate Clause has been construed to include a testimonial privilege. *See id.* at 616. Courts have extended that privilege to block disclosure of documents sought by a subpoena, so long as the document request constitutes an inquiry into legislative acts. *See id*; *Brown & Williamson Tobacco Corp v. Williams*, 62 F.3d 408, 418 (D.C. Cir. 1995). The privilege also protects Congressional information gathering and the documents that are the products of such research. *See Comm. on Ways & Means*, 161 F. Supp. 3d at 236–37, 245; *see also McSurely v. McClellan*, 553 F.2d 1277, 1286 (D.C. Cir. 1976) ("information gathering, whether by issuance of subpoenas or field work by a Senator or his staff, is essential to informed deliberation over proposed legislation" and is

11

therefore protected legislative activity).  When considering application of the privilege, a court must determine "whether 'the information is acquired in connection with or in aid of an activity that qualifies as "legislative" in nature,' not what the source of the information is."  *Comm. on Ways & Means*, 161 F. Supp. 3d at 237 (quoting *Jewish War Veterans v. Gates*, 506 F. Supp. 2d 30, 57 (D.D.C. 2007)).

While the protections under the Speech or Debate Clause are broad, "the Clause has not been extended beyond the legislative sphere."  *Gravel*, 408 U.S. at 624-25.  As the Supreme Court has explained,

> [m]embers of the Congress engage in many activities other than the purely legislative activities protected by the Speech or Debate Clause.  These include a wide range of legitimate "errands" performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called "news letters" to constituents, news releases, and speeches delivered outside the Congress.  The range of these related activities has grown over the years. . . .  But it has never been seriously contended that these political matters, however appropriate, have the protection afforded by the Speech or Debate Clause.

*United States v. Brewster*, 408 U.S. 501, 512 (1972); *see also McMillan*, 412 U.S. at 313 ("[E]verything a Member of Congress may regularly do is not a legislative act within the protection of the Speech or Debate Clause.").  Nor does the privilege attach to documents or communications that are "merely administrative or personal in nature."  *Comm. on Ways & Means*, 161 F. Supp. 3d at

246 (citing *Gov't of Virgin Islands v. Lee*, 775 F.2d 514, 522 (3d Cir. 1985) ("Private conversations—even between officials of governments—do not necessarily involve official business.")).

Mr. McLean contends that all of the testimony and documents being sought by Vallee are protected under the Speech or Debate Clause. He notes that beginning in 2007, Senator Sanders served as a member of the Senate Committee on Energy and Natural Resources. That Committee has jurisdiction to investigate and legislate on matters relating to energy generally, and oil and gas specifically. In August 2012, Senator Sanders held a hearing in Burlington on the issue of high gas prices in northwest Vermont. He has also sponsored relevant legislation, and has spoken on the Senate floor about the issue. Mr. McLean argues that related information acquired by his office has informed the Senator's exercise of his legislative activities.

Any communications within Senator Sanders' office with respect to gasoline price legislation are protected. *See, e.g., Gravel*, 408 U.S. at 629 (barring testimony "concerning communications between the Senator and his aides during the term of their employment and related to [subcommittee] meeting or any other legislative act of the Senator"); *see also Eastland*, 421 U.S. at 504 n.15 (noting that matters relating to potential legislation are protected from inquiry). Communications with other Senators and/or their staffs on the issue are also

protected, since those communications are an essential part of the legislative function. *See United Transp. Union v. Springfield Terminal Ry. Co.*, 132 F.R.D. 4, 6 (D. Me. 1990).

> In order to be effective at their legislative tasks, legislators must be able to confer among themselves and with their assistants. Just as they must be able to obtain information pertinent to potential legislation, they must be able to discuss and analyze issues that are subjects of pending or potential legislation in order to plan for and work on that legislation. Internal congressional communication, whether between legislators or between legislators and their aides, is plainly "an integral part of the . . . communicative processes by which Members participate in House proceedings." *Gravel*, 408 U.S. at 625.

*Id.*

With respect to communications between the Senator's office and other governmental agencies, such as the FTC or the Vermont Attorney General's Office, any information shared with those entities that was generated as part of a legislative function is protected. *See, e.g., MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 862 (D.C. Cir. 1988) ("As the preparation and publication of the Bledsoe statement fall within the sphere of the subcommittee's legislative activities, the fact of its transmittal to the Attorney General does not entitle the Hunts to the information they seek."). This same principle holds true for communications with private attorneys, since "the issue here is not whether the *dissemination* of the statement is protected by the Clause, but whether the work of the subcommittee in preparing and publishing the statement is *itself* protected." *Id.* In

14

*MINPECO*, the court rejected the defendant's argument that external communications are not covered, citing the Supreme Court's consistent position that the Speech or Debate Clause must be read broadly to effectuate its purpose. 855 F.2d at 861-63 (quashing subpoena seeking "correspondence and communications" between Congressional subcommittee and "any private litigants or their attorneys").

Vallee submits that in order for investigative materials to be protected, the party claiming protection must identify a formal authorization. ECF No. 10 at 24. For this Court to require such authorization, particularly when an investigation occurs prior to formal Congressional action, would run counter to the general principle that Congresspersons cannot be compelled to share information obtained in their efforts to legislate. *Cf. Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983) ("Obtaining information pertinent to potential legislation is one of the 'things generally done in a session of the House' . . . concerning matters within the 'legitimate legislative sphere.'") (citation omitted); *Jewish War Veterans*, 506 F. Supp. 2d at 54 ("The Members are correct that, under the law of this and other circuits, informal information gathering in connection with or in aid of a legitimate legislative act is itself protected by the Speech or Debate Clause.").

Vallee further argues that the state court litigation

pending against it may have been initiated at the urging of the Senator's office, and that encouraging private litigation is not a legislative act. Specifically, Vallee contends that the underlying state court action "may well have been brought forward based upon political considerations, rather than actual evidence of anti-competitive conspiracy . . . . While this animus and bias against R.L. Vallee is no secret, their extent can only be ascertained through discovery." ECF No. 10 at 27. As this passage in the briefing makes clear, a fundamental purpose of the subpoena is to reveal the motivation behind certain communications within and from the Senator's office.

In *Brewster*, the Supreme Court held that the Speech or Debate Clause "protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." 408 U.S. at 525. Consequently, even if Senator Sanders was motivated by animosity to engage in core legislative activities, his motives cannot be questioned. *See Eastland*, 421 U.S. at 508-09 ("If the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the Clause, then the Clause simply would not provide the protection historically undergirding it."); *United States v. Johnson*, 383 U.S. 169, 180 (1966) ("[A] charge . . . that the Congressman's conduct was improperly motivated . . . is precisely what the Speech or Debate Clause generally

forecloses from . . . judicial inquiry."); *United States v. Barenblatt*, 360 U.S. 109, 132 (1959) ("So long as Congress acts in pursuance of its constitutional power, the Judiciary lacks authority to intervene on the basis of the motives which spurred the exercise of that power.").

Vallee contends that some of the requested information, including Mr. McLean's communications, did not constitute either legislative field work or fact-finding and was therefore outside the legislative sphere.  Regardless of any applicable protections, Mr. McLean's communications with plaintiffs' counsel have already been produced.  Mr. McLean also submits that his work constituted legitimate "investigatory activities regarding the conditions affecting the price of gas."  ECF No. 17 at 12.

Courts generally accept "that the action of the legislative body was with a legitimate object, if it is capable of being so construed, and we have no right to assume that the contrary was intended."  *McGrain*, 273 U.S. at 178 (quotation marks and citation omitted); *see also United States v. Biaggi*, 853 F.2d 89, 103 (2d Cir. 1988) ("the Speech or Debate Clause forbids not only inquiry into acts that are manifestly legislative but also inquiry into acts that are purportedly legislative, 'even to determine if they are legislative in fact'") (quoting *United States v. Dowdy*, 479 F.2d 213, 226 (4th Cir.), *cert. denied*, 414 U.S. 823 (1973)).  Senator Sanders has for several years been

inquiring into gasoline pricing and gasoline competition in Vermont. His staff, including Mr. McLean, has therefore worked to obtain and generate information about that issue "on which legislation could be had." *Eastland*, 421 U.S. at 504 n.15.

Vallee relies upon *Government of Virgin Islands v. Lee*, 775 F.2d 514 (3d Cir. 1985), wherein the Third Circuit considered discovery on the nature of a Congressman's private meetings and conversations. The *Lee* court noted that "fact-finding occupies a position of sufficient importance in the legislative process to justify the protection afforded by legislative immunity," *id.* at 521, but allowed discovery on the question of whether the Congressman's conversations were, in fact, legislative. *Id.* at 522 (holding that assertions of immunity "cannot preclude a court of competent jurisdiction from determining whether Lee's conversations were, in fact, legislative in nature"). Here, the contents of Mr. McLean's communications with plaintiffs' counsel have been produced to Vallee and/or its co-defendants. Therefore, unlike the conversations in *Lee*, the nature of those communications is largely known.

As initially drafted, Vallee's subpoena clearly seeks documents that are at the core of the Senator's legislative activities. Many of those documents would reveal the history and intent behind the legislation spoken about and supported by Senator Sanders. In the course of this litigation, Vallee has

offered to significantly narrow the scope of its request.  For
example, counsel has suggested a word search for the term
"Vallee" in Senate files, and asks the Court to consider *in
camera* review prior to document production.  Neither approach
adequately addresses the protections intended by the Speech or
Debate Clause.

Vallee's name would almost certainly have been mentioned in
internal Senate communications dating back several years, as it
was identified as one of the owners of a substantial percentage
of gas stations in northwest Vermont.  To compel the Senator's
office to cull its files to seek out all references to Vallee
would likely reveal privileged legislative communications, and
would frustrate one of the fundamental purposes of the Speech or
Debate clause.  In *Eastland*, the Supreme Court observed that "a
private civil action, whether for an injunction or damages,
creates a distraction and forces Members to divert their time,
energy, and attention from their legislative tasks to defend the
litigation."  421 U.S. at 503.  In *MINPECO*, the D.C. Circuit
similarly criticized service of judicial subpoenas upon a
congressional office:

> [T]he effect of their literal enforcement would be to
> authorize a fishing expedition into congressional
> files.  For a court to authorize such open-ended
> discovery in the face of a claim of privilege and in
> the absence of any information to suggest the likely
> existence of nonprivileged information would appear
> inconsistent with the comity that should exist among
> the separate branches of the federal government.

844 F.2d at 862–63.  Indeed, "[t]he purpose of the [Speech or Debate Clause] would be ill-served if legislators and their staffs had to search through their internal correspondence, memoranda, notes and collective memories to determine whether a given document had a legislative, non-legislative, or mixed purpose.  Much valuable time, energy, and attention would be diverted from important legislative tasks."  *United Transp. Union*, 132 F.R.D. at 6 (citing *Eastland*, 421 U.S. at 503).

Those same concerns arise here, and the Court will not countenance such an expenditure of legislative labor.  Accordingly, in keeping with the protections provided to the Senator's office under the required broad reading of the Speech or Debate Clause, the subpoena must be quashed.

## III. Undue Burden

There can be little question that Vallee's subpoena, as initially proposed, is highly burdensome.  Vallee seeks, among other things, internal Senate communications, committee investigation materials, and communications within the Senator's office about possible future political opponents.  In the context of an underlying lawsuit concerning the price of gasoline, those requests are not only unduly burdensome but also, in some instances, of questionable relevance.  *See Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) ("Whether a subpoena imposes an 'undue burden' depends upon 'such

factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'")(quoting *United States v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)).

The subpoena seeks documents generated over a period of nearly seven years. While it lists thirty separate categories of information, the first category has thirteen sub-parts. With few exceptions, the requests ask for "all documents and communications" within each respective category. Some categories make no reference to gas pricing. One request asks for all documents relating to meetings involving the Vermont Attorney General's Office. Another seeks, without limitation, "all documents and communications related to a meeting or meetings with anyone representing the United States Department of Justice (DOJ), at any time." ECF No. 7-1 at 7 (Request No. 27). Such a wide-ranging request for documents, several of which have no apparent relevance to the pending state court litigation, is beyond the bounds of an enforceable subpoena. *See generally Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 57 (S.D.N.Y. 2018); *Int'l Business Machines Corp.*, 83 F.R.D. at 104; Fed. R. Civ. P. 45(d)(3)(iv). The Court therefore finds that, in addition to being barred by the Speech or Debate Clause, the subpoena imposes an undue burden.

**Conclusion**

For the reasons set forth above, the motion to quash is **granted**. This case is closed.

DATED at Burlington, in the District of Vermont, this 4th day of June, 2019.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge